Case number 20-1234. Telesat Canada et al. petitioners versus Federal Communications Commission and United States of America. Mr. Furey for the petitioners, Ms. Smith for the respondents. Thank you. Good morning, your honors. May it please the board. I'm sorry. I said good morning. Oh, okay. I'm Ken Furey. I'll be speaking for the joint petitioners this morning. In the order before you, the FCC has abandoned its long-standing view that Section 9 of the Communications Act permits it to assess regulatory fees only upon the satellites that it licenses. We hope and expect that the court will conclude upon review that its newly expansive view of its Section 9 fee authority does not comport with the statute. Now, the government would have the court believe that this is a cookie-cutter case of an agency interpreting its organic statute. It is not. What we have instead is the FCC doing an unlawful U-turn on its heretofore— Unlawful is your assumption. That's what this case is about, counsel. I'm hoping you're going to agree with me by the time I've finished, your honor. You would have to agree that it is possible for an agent to lawfully change its position on its interpretation of a statute, would you not? Sure. It is possible. That's not what happened here. Well, that's what we're here to decide. Now, if that's the case, that the agency did in fact lawfully change its position, and this were before us as an initial matter, do you have an argument that this would be an unlawful interpretation, or is this unlawful simply because it's a change of position? Well, I would say both, your honor. I mean, there's two— Well, let's deal with the one first. Okay, which do you want to deal with? We know that you're saying it's an unlawful change, but if the first interpretation had never been there, if this were just the first interpretation the agency had made, do you have an argument against this interpretation? Yes, your honor, we do. You would be approaching this under sort of a Chevron step two kind of analysis, right? So the agency in this case has changed its—again, I'm not arguing about the change of position, but the change was based solely on its new interpretation of the 1993 conference report. There's a lot of other— No, no, no, not the conference report. We're talking about the statute. Judge Sentelle asked you about the statute, and if I could just refine it a little bit, it seems to me for you to prevail at Chevron two, you have to convince us that the interpretation of the statute, namely that it authorizes it to impose fees on satellite operators that are not U.S. licensed. That's my question. You have to demonstrate that that position is—that that interpretation is unreasonable, and you can't start with the legislative history. You've got to start with the language of the statute. That's fine. So the language of the statute, I think we all agree, doesn't get you very far because all the statute says is it creates a payee category for space stations. It has a section called exemptions or exceptions, and as we said in Pan Am said, if you're going to find an exception in the statute, you would expect to find it in 9E. But you don't have to get to exceptions when you're talking about the basic authority of the commission to assess the fees, just like in ComSat where they said the FCC couldn't come up with a fee category for unregulated railroads or people eating ice cream. It has to have an initial grant of authority to reach the entities it's trying to assess the fees from. So here the statute just says space stations. That's it, and it doesn't in any way limit what that is. That could be on the most ridiculous level, every space station around the Earth. Nothing in the statute says it's not that. Space stations, it lists two kinds, near-Earth orbit and geosyncratic, and they have to be satellites. They have to be operations that impose costs on the commission, right? Yeah, right. So it's not just any satellite anywhere on the planet. Well, okay, right, but there are a lot of different ways you could split that baby. It could be space stations. That's what gets us to Chevron too. If there are a lot of different ways you can split that baby, that's what gets us to Chevron too. Don't you have to show us why it's unreasonable to make the baby split that they've made here? Fine, but I'm conceding that the statute doesn't get you to the answer, but Chevron allows you to look at the structure of the statute and the legislative history, and that's in fact where the effort here imposes the fees based on cost. Costs are generated not because of licensing, but because of operation in the United States. So why doesn't that lead us to think that not only this is an acceptable interpretation, but perhaps even the best interpretation? Well, first of all, your honor, I mean, there are lots of entities that impose regulatory costs upon the agency that are not assessed regulatory fees. That's beyond doubt. There's lots and lots of- It's also beyond doubt that the agency under this particular statute is receiving fees based on aren't fee paying. We're dealing with this particular statute in these particular facts, and so why isn't it reasonable for the agency to operate on that basis when it determines who it's going to charge the fees to? Well, again, I would get to Congress has spoken to this issue, and you can see that if you would go through the entire Chevron analysis. I'm sorry, Judge Silverman. Excuse me. Let me go to your legislative history. You're looking at particularly the language that the committee intends back when originally legislation was passed. Look at that legislative history you rely on. Why is there a last sentence? Fees will not be applied to space stations operated by international organizations. Why is that sentence there? Well, that's actually a good question because as this court pointed out in Pan Amsat, the international organizations were exempt already under the International Organizations Immunities Act. So, the international organizations were exempt in a sense that the commission's new interpretation trying to say that all of that legislative history is simply about the NGOs. You're not following my question. Here's where it looks to me that even the legislative history is ambiguous. The last sentence combined with the second sentence seems to have implied thus. Therefore, these fees will apply only to space stations directly licensed by the commission under the act. Thus, fees will not be applied. I'm adding the word thus. Thus, fees will not be operated by international organizations. That can be read as the second sentence and the third sentence are connected. In other words, the Congress was only focusing on the international organizations. If that's true, then the legislative history was silent with respect to space stations licensed by foreign countries. If the legislative history was silent on your issue, then the statute is even more appropriately interpreted by the commission. But I don't think that's the correct reading of that legislative history. As I was going to say, the international organizations were already exempt. So, why did Congress have that last sentence? And then the commission wants to say that both of those sentences are only about the NGOs. So, it's surplusage on top of surplusage at that point. Well, there's no rule against surplusage in legislative history. The statute has to stand. The legislative history if the statute is interpreted reasonably, the legislative history was never enacted by Congress. The statute was enacted by Congress. So, who cares if there's surplusage in legislative history? There's often surplusage in legislative history just because some congressman wants to get that statement in the record. Our former colleague who was a former congressman used to say that he went around making up legislative history in order to have it there later. Well, even at that point, the problem with the legislative history I think is ambiguous itself. There's no hook, as we've said before. There's no hook between the legislative history or your interpretation of legislative history and the statute. There is. It's entirely consistent with the entire structure of the statute, which was that one originally passed by Congress only applied fees to entities that the FCC directly licensed or authorized. And that's exactly what the legislative history says. They're entirely consistent. We mean when we say space stations, only those authorized by the FCC pursuant to Title III. Well, okay. Even if you're right about that, let's assume you're right about that. Like Judge Silliman, I'm not persuaded, but just assume you are. The commission says, well, that was a totally different situation. There were very few, if any, privately operated satellites not licensed. And now there are. The circumstances has led by conference language that dealt with a different circumstance existing in satellite technology. Well, again, first of all, I'd say that the circumstances haven't changed dramatically or materially since 2014, which was the last time the FCC decided it didn't have jurisdiction. They haven't changed since the further notice of proposed rulemaking in this very proceeding in which the FCC seemed to assume that its prior construction was correct and that the only way could reach non-U.S. licensed satellites was via some change that happened in Ray Bomzak. It was only at the 11th hour that they came up with this brand new theory. Oh, no, we've gone back and looked at legislative history from 30 years ago, decided we interpreted it incorrectly 25 years ago. And now we have a new view of what Section 9 has always meant, apparently, that we were supposed to be applying regulatory fees to non-U.S. satellites. Meanwhile, Congress- referring to your shock on the change on the legal theory as being inadequate notice under APA. The I saw the and the what I would call the NPRM and the agency specifically made several statements looking to general questions as to whether or not the foreign licensed satellites should be charged regulatory fees. They put that general question out to be sure. They said, did the Ray Baum statute alter the situation? But they had several times looked at the general question. So you were in notice that they were trying to figure a way to interpret the language of everything to allow them to impose fees on foreign licensed satellites. So you were on notice on that. And it seems to me any lawyer would have realized they were they had been several times reaching for the proper theory. So you were there was broader than Ray Baum. Well, no lawyer that actually commented in formal comments thought to go back and argue about what the 1993 conference report meant. That had been a given for almost 30 years at that point, 25 years. It was not no nobody thought that that was an issue. Well, except that the agency had several times been looking to see how they would get around the original interpretation of the statute. To be sure that's true. I mean, this was clearly an ends driven decision. They wanted to be able to apply these fees to foreign licensed satellites. So you would just make it a pure guessing game. Then if it's like we're going to make the most general statement and you've got to think about every conceivable argument, including those that have been decided for 25 years and accepted as the given construction of the statute. Nonetheless, assuming that they have or haven't given notice, they've legally said enough to get this done in this rulemaking. So you're still stuck with the problem that you have. This interpretation by the agency seems to be consistent with language of the statute. All the rest of this, you're not hurt by any lack of notice. You have everything you need now to make the legal argument. You're talking about legal arguments. You have all those chances now. It didn't hurt you. You didn't think this notice was adequate. I would agree. We have everything we need now. And I do. I agree. The court should make the decision and tell us what section nine means. I would like to have had a chance to talk about re-enactment because I think this is a classic re-enactment case. But I see my time has expired. You're well over. And unless either of my colleagues has any more questions, I think we'll hear from the commission. Thank you, Your Honor. Good morning, Your Honors. Pamela Smith for the Federal Communications Commission. I first want to start out with Mr. Faree's statement that no parties filed comments regarding the commission's prior interpretation of the legislative history for section nine. In particular, Petitioner Telesat filed formal comments, filed formal reply comments, specifically opposing those comments that maintain that the commission has had authority to impose regulatory fees on space stations that are directly authorized by the commission to access U.S. spectrum and provide satellite service in the United States ever since section nine was first enacted. Section nine provided the commission with a specific authority to assess regulatory fees on space stations, space stations that are in geostationary orbit and space stations that are in non-geostationary orbit. Those are the only two categories. The space stations petitioners, they operate in the United States and provide service in the United States under authority that is directly granted to them by the commission. No space station, whether domestically licensed or foreign licensed, can operate in the United States and access U.S. spectrum except as authorized by the commission. Therefore, the commission lawfully exercises its authority under section nine to amend the schedule of regulatory fees to include non-U.S. licensed space stations that have been granted U.S. market access as payers of the commission's regulations. Do you agree with your opponent that our interpretation of the statute is based on the assumption that it's ambiguous and we are therefore at Chevron step two? Do you agree with that? Yes, it can be. I'm sorry. I think the easy answer, I think, I think the easy answer on step because the statute is clear. The easy answer to Judge Sullivan's question for you, I think, is that in your brief, you don't argue Chevron step one. You say the commission's interpretation is reasonable. That's your argument, isn't it? Right. In fact, that's the title of the section, I think. That's what you title your section? Yes. The commission's interpretation is reasonable and looking at the legislative history and concluding that that legislative history does not act as a bar to imposing regulatory fees on market access grantees. Why do you dismiss the legislative history? It's because you do you read it as focused really on the international organizations only. That is the interpretation of the two sentences together. Or do you say that the legislative history is irrelevant because it doesn't, there's no hook tying it to an interpretation of the actual statute, which is the position or is it both? In this context, it's both because previously, the commission based its decision not to assess regulatory fees on non-U.S. licensed space stations. And that, and the reason it did so was rooted exclusively in the legislative history, not in the statute. And that, and now the commission could not reasonably have. In your brief, you argue that the focus of the Congress, even on the legislative history, was not to touch international organizations. And that was implicitly, that's what you're even if you look at the legislative history. But as Judge Santel points out, there is no connection. First of all, even if you look at the legislative history, there's no connection. There's no hook, as we've said before, between the petitioner's interpretation of the legislative history and any language in the statute. It seems to be sort of freestanding. Yeah. Yes, that is true, Judge Silberman. But the commission interpreted that, looked to that legislative history in the context of there being only two types of satellites when Section 9 was enacted. There were only satellites that were directly licensed by the commission, or there were these international satellites that were not directly licensed by any country. And those satellites operated, those satellites were subject to the International Organizations Communities Act, and they were not, and their operations in the U.S. were not, were only indirectly regulated by the commission. Don't reject too hastily the proposition that perhaps we ought not to be looking with much favor on legislative history at all. The words of the statute, as enacted, are controlling, and your interpretation of them has to be reasonable, whether, regardless of the legislative history, doesn't it? Yes, and that is, and the commission's interpretation is reasonable. Okay, thank you. Unless the court has any other questions, the commission requests that the petition for review be dismissed as to Petitioner Kanae's, and otherwise denied review of the commission's lawful exercise of its authority to amend the schedule of regulatory fees to include access grantees as payers. What do you, what's your reaction to Mr. Ferrier's argument that the commission's interpretation, the commission's new interpretation of the legislative history is just a last minute brainstorm they had that, A, is suddenly new, it's just come up, and nobody had any notice about that. I, that is an unfair characterization of the proceeding below. The commission did not decide just in this, did not review this issue just in this proceeding. The commission has that the commission sought comment on whether or not it should apply regulatory fees to market access grantees. You didn't. And I'm sorry. Your notice of proposed rulemaking specifically said we're looking to whether or not we have legal authority to impose regulatory fees on foreign satellites. You said that openly in your notice of proposed rulemaking. That is correct. So you should focus on that. Although you specifically referred to the statute, you did put the general question up. Do we have legal authority to impose regulatory fees? That is correct. And the commission actually dismissed comments regarding the Ray Balms Act as irrelevant to the issue of whether or not the commission has authority under Section 9 to assess these regulatory fees. Okay. Thank you. Thank you so much. Mr. Fari, you were out of time, but you can take a minute if you'd like. I just have three quick points, Your Honor. I mean, first of all, I would point out that this court in the Pan Amsat case treated Title III as being coterminous with the FCC's fee authority. For better or worse, that's what the court did in that case. I think that was the right approach. I note again that the commission has referred once again to a Section 9D amendment. It is claiming that this was a 9D amendment, the action in the report and order. I don't think you can just use that as an Orphic incantation and do whatever you want. If you're the FCC, create new categories out of whole cloth. And finally, my opposing counsel just made the point that the market was quite different in the early 1990s. We wouldn't dispute that, but there were instances of non-U.S. satellites providing service at the time. It was official U.S. policy to facilitate the expansion of that kind of service. It wasn't any kind of surprise to anybody. Indeed, the contemporaneous FCC, roughly contemporaneous with the Congress that passed this act, looked at it and said, yes, what Section 9 means is applicable only to Title III space stations. Thank you. Thank you, Your Honors. Thank you both. The case is submitted.
judges: Tatel, Silberman, Sentelle